IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY,
and SIERRA CLUB,

        Plaintiffs,

v.                            CIVIL ACTION NO. 2:15-cv-12554

PRITCHARD MINING COMPANY, INC.,

        Defendant.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODCUTION

1. This is a citizen suit for declaratory and injunctive relief against Defendant Pritchard Mining Company, Inc. ("Pritchard"), for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or "the CWA"), and the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 et seq. (hereinafter "SMCRA") at its Fourmile Surface Mine in Kanawha and Boone Counties, West Virginia.

2. As detailed below, Plaintiffs allege that Pritchard has discharged and continues to discharge pollutants into waters of the United States in violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, and the conditions and limitations of its West Virginia/National Pollution Discharge Elimination System ("WV/NPDES") Permit WV1015184 issued pursuant to Section 402 of the Clean Water Act.

3. Plaintiffs further allege that Pritchard's discharges of unlawful quantities of pollutants into waters adjacent to the Fourmile Surface Mine violate the performance standards under SMCRA and the terms and conditions of its Surface Mining Permit S300796.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365 (CWA citizen's suit provision), and 30 U.S.C. § 1270 (SMCRA citizens' suit provision).

5.  On January 16, 2015, Plaintiffs gave notice of the violations and its intent to file suit to the Defendant, the United States Environmental Protection Agency ("EPA"), the Office of Surface Mining Reclamation and Enforcement ("OSMRE"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and Section 520(b)(1)(A) of SMCRA, 30 U.S.C. § 1270(b)(1)(A).

6.  More than sixty days have passed since that notice was sent. EPA, OSMRE, and/or WVDEP have not commenced or diligently prosecuted a civil or criminal action to redress the violations. Moreover, neither EPA nor WVDEP commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or a comparable state law to redress the violations prior to the issuance of the January 16, 2015 notice.

7.  Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the Clean Water Act violations are located in this District, and pursuant to 30 U.S.C. § 1270(c) because the coal mining operations complained of are located in this District.

## PARTIES

8.  Pritchard is a West Virginia Corporation engaged in the business of mining coal.

9.  Pritchard is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and Section 701(19) of SMCRA, 30 U.S.C. § 1291(19).

10. At all relevant times, Pritchard has owned and operated the Fourmile Surface Mine in Boone and Kanawha Counties of West Virginia. The mine is regulated pursuant to

Surface Mining Permit S300796 and discharges pollutants into, among other streams, Little Rich Fork of Rich Fork of Bull Creek, subject to the effluent limits in WV/NPDES Permit WV1015184.

      11.      Plaintiff Ohio Valley Environmental Coalition is a nonprofit organization incorporated in Ohio.  Its principal place of business is in Huntington, West Virginia.  It has approximately 1,500 members.  Its mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, grassroots organizing, coalition building, leadership development, and media outreach.  The Coalition has focused on water quality issues and is a leading source of information about water pollution in West Virginia.

      12.      Plaintiff West Virginia Highlands Conservancy, Inc., is a nonprofit organization incorporated in West Virginia.  It has approximately 1,700 members.  It works for the conservation and wise management of West Virginia's natural resources, and is one of West Virginia's oldest environmental activist organizations.  The West Virginia Highlands Conservancy is dedicated to protecting our clean air, clean water, forests, streams, mountains and the health and welfare of the people that live here and for those who visit it to recreate.

      13.      Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with more than 600,000 members and supporters nationwide including approximately 2,000 members who reside in West Virginia and belong to its West Virginia Chapter.  The Sierra Club is dedicated to exploring, enjoying, and protecting wild places of the Earth; to practicing and promoting the responsible use of Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using

all lawful means to carry out these objectives. The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface water in West Virginia.

14. Plaintiffs have members including, Julian Martin, who use, enjoy, and benefit from the water quality in Bull Creek, Rich Fork, and Little Rich Fork. They would like to recreate in areas downstream from the portion of the streams into which Pritchard's Fourmile Surface Mine discharges pollutants harmful to aquatic life, including total dissolved, conductivity and sulfate. Excessive amounts of these pollutants degrade the water quality of Bull Creek and its tributaries, make the water aesthetically unpleasant and environmentally undesirable and impair its suitability for aquatic life. Because of this pollution, Plaintiffs' members refrain from and/or restrict their usage of Bull Creek, its tributaries, and associated natural resources, and derive less enjoyment from such use. As a result, the environmental, health, aesthetic, and recreational interests of these members are adversely affected by Pritchard's excessive discharges of these and other pollutants into Little Rich Creek and its receiving waters from its Fourmile Surface Mine in violation of its NPDES and SMCRA permits. If Pritchard's unlawful discharges ceased, the harm to the interests of Plaintiffs' members would be redressed. Injunctions would redress Plaintiffs' members' injuries by preventing and/or deterring future violations of the conditions in Pritchard's permits.

15. At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5) and SMCRA, 30 U.S.C. § 1291(19).

## STATUTORY AND REGULATORY FRAMEWORK

16. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of

a permit, such as a NPDES permit issued by EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

17. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit-issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

18. Section 402 of the CWA, 33 U.S.C. § 1342, directs the Administrator of EPA to prescribe conditions for NPDES permits to ensure compliance with the requirements of the CWA, including conditions on data and information collection, reporting, and other such requirements as the Administrator deems appropriate.

19. Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate, and concentration of chemical, physical, biological, and other constituents of wastewater discharges. Effluent limitations are among the conditions and limitations prescribed in NPDES permits issued under Section 402(a) of the CWA, 33 U.S.C. § 1342(a).

20. Section 303(a) of the CWA, 33 U.S.C. § 1313(a) requires that states adopt ambient water quality standards and establish water quality criteria for particular water bodies that will protect designated uses of the water.

21. The Administrator of EPA authorized WVDEP, pursuant to Section 402(a)(2) of the Act, 33 U.S.C. § 1342(a)(2), to issue NPDES permits on May 10, 1982. 47 Fed. Reg. 22363. The applicable West Virginia law for issuing NPDES permits is the Water Pollution Control Act

("WPCA"), W.Va. Code § 22-11-1, et seq. Permits issued under the West Virginia program are known as "WV/NPDES" permits.

22. Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person. . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter."

23. Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a), of the CWA and "a permit or condition thereof issued" under Section 402, 33 U.S.C. § 1342, of the CWA.

24. In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant or defendants to comply with the CWA, 33 U.S.C. § 1365(d).

25. Under Section 505(d) of the CWA, 33 U.S.C. § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

26. Section 506 of SMCRA, 30 U.S.C. § 1256, prohibits any person from engaging in or carrying out surface coal mining operations without first obtaining a permit from OSMRE or from an approved state regulatory authority.

27. At all relevant times, the State of West Virginia has administered an approved surface mining regulatory program under SMCRA. See 30 C.F.R. § 948.10.

28. Among the performance standards mandated by SMCRA and the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA") is that "[d]ischarge from areas

6

disturbed by . . . mining shall not violate effluent limitations or cause a violation of applicable water quality standards." 30 C.F.R. §§ 816.42 and 817.42; 38 C.S.R. § 2-14.5.b.

29. The performance standards further require that "[a]ll surface mining and reclamation activities shall be conducted . . . to prevent material damage to the hydrologic balance outside the permit area." 38 C.S.R. § 2-14.5. At a minimum, "material damage" includes violations of water quality standards.

30. The legislative rules promulgated under WVSCMRA provide that, as a general condition of all surface mining permits issued under the WVSCMRA, the permittee must comply with all applicable performance standards. 38 C.S.R. § 2-3.33.c.

31. Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), authorizes any person adversely affected to bring an action in federal court to compel compliance with SMCRA against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to [SMCRA]."

32. Section 520(d) of SMCRA, 30 U.S.C. § 1270(d), authorizes the Court to award the costs of litigation, including attorney fees and expert witness fees, "to any party, whenever the court determines such an award is appropriate."

33. WVDEP is the agency in the State of West Virginia that administers the State's CWA and SMCRA programs and issues WV/NPDES Permits and WVSCMRA Permits.

**FACTS**

34. On or about March 6, 1997, WVDEP issued West Virginia Mining Permit No. S300796 to Battle Ridge Companies for the Fourmile Surface Mine in Kanawha and Boone Counties, West Virginia.

35. On or about August 19, 1999, WVDEP transferred that permit to CC Coal Company, and renewed the permit in 2002.

36. WVDEP approved a transfer of the mining permit from CC Coal Company to Pritchard.  WVDEP renewed the permit in 2007 and again in 2012, and the permit remains in effect today.

37. Among the surface mining activities authorized by Surface Mining Permit No. S300796 is the construction of Valley Fill No. 3 in the headwaters of Little Rich Fork of Rich Fork of Bull Creek.  Effluent from Valley Fill No. 3 is discharged into Little Rich Fork through Outlet 003, regulated by WV/NPDES Permit WV1015184.

38. WVDEP issued WV/NPDES Permit No. WV1015184 on February 2, 1997, to Battle Ridge Companies to authorize discharges from the Fourmile Surface Mine.

39. On or about February 25, 2000, WVDEP transferred WV/NPDES Permit WV1015184 to CC Coal Company and reissued the permit in 2004.

40. On or about September 23, 2005, WVDEP transferred WV/NPDES Permit WV1015184 to Pritchard.  WVDEP reissued WV/NPDES Permit WV1015184 in 2006 and 2014, and the permit remains in effect.

41. Outlet 003 of WV/NPDES Permit WV1015184 drains discharges from Valley Fill No. 3 into Little Rich Fork.

42. WV/NPDES Permit WV1015184 requires instream monitoring of concentrations of several pollutants in Little Rich Fork.

43. Part C of WV/NPDES Permit No. WV1015184 incorporates by reference 47 CSR § 30-5.1.f, which provides that: "The discharge or discharges covered by a WV/NPDES permit are to be of such quality so as not to cause violation of the applicable water quality standards

adopted by the Department of Environmental Protection, Title 47, Series 2."[1] WVDEP's narrative water quality standards prohibit discharges of "[m]aterials in concentrations which are harmful, hazardous, or toxic to man, animal or aquatic life" or that cause "significant adverse impacts to the chemical, physical, hydrologic, or biological components of aquatic ecosystems." 47 CSR § 2-3.2.e & 2-3.2.i.

44. The original applicant for Surface Mining Permit S300796 provided baseline water quality data to WVDEP in Section J of the application. Among those data were the following measurements of the total dissolved solids ("TDS"), conductivity, and sulfates in Little Rich Fork prior to the commencement of mining operations at the Fourmile Surface Mine:

| Sampling Date | TDS (mg/L) | Conductivity (µS/cm) | Sulfates (mg/L) |
| --- | --- | --- | --- |
| March 27, 1995 | 55 | 81 | 28.11 |
| April 5, 1995 | 100 | 146 | 23.28 |
| May 22, 1995 | 61 | 95 | 21.75 |
| June 7, 1995 | 91 | 140 | 20.06 |
| July 13, 1995 | 129 | 187 | 20.12 |

45. In Spring 2005 and Fall 2005 (again, before construction of Valley Fill No. 3 began), Pritchard commissioned benthic surveys of the aquatic life in Little Rich Fork. Those surveys occurred at two locations in Little Rich Fork: LRF1 and LRF2. Among the data collected during the benthic surveys were the following measurements of conductivity, TDS, sulfates, calcium, and magnesium:

| Sampling Location | Sampling Date | TDS (mg/L) | Conductivity (µS/cm) | Sulfates (mg/L) | Calcium (mg/L) | Magnesium (mg/L) |
| --- | --- | --- | --- | --- | --- | --- |
| LRF1 | April 5, 2005 | 6 | 50 | 16.7 | 3.22 | 3.07 |
| LRF2 | April 5, 2005 | 27 | 40 | 15.5 | 2.83 | 3.05 |

---

[1] Although the State of West Virginia is attempting to modify 47 CSR § 30-5.1.f, that modification is not yet effective because it has not been approved by EPA. Ohio Valley Envtl. Coalition, Inc. v. Fola Coal Co., LLC, Civ. No. 2:13-cv-21588, CM/ECF # 94 at 16 (S.D. W. Va. May 29, 2015).

| LRF1 | November 3, 2005 | 66 | 80 | 18.8 | 16.7 | 7.67 |
| LRF2 | November 3, 2005 | 67 | 50 | 18 | 5.89 | 4.98 |

46. Pritchard's consultant determined that Little Rich Fork's West Virginia Stream Index ("WVSCI") score in Spring 2005 was 90.6 at LRF1 and 78.2 at LRF2. The calculated WVSCI score in Little Rich Creek for Fall 2005 was 76.1 at LRF1 and 70.5 at LRF2. WVDEP considers streams with WVSCI scores above 68 to be biologically unimpaired.

47. After construction of Valley Fill No. 3 began, Pritchard measured increasing levels of conductivity in Little Rich Fork at Outlet 003. For example, in 2010, Pritchard reported the following measurements of conductivity at DSLRF to WVDEP, in correspondence related to a violation of the aluminum limits in WV/NPDES Permit WV1015184:

| Sampling Date | Conductivity (µS/cm) |
| --- | --- |
| December 3, 2009 | 935 |
| December 21, 2009 | 305 |

48. Also in 2010, Pritchard measured the following conductivity levels at the instream monitoring location in Little Rich Fork and reported them to WVDEP as part of its application for Amendment No. 2 to Surface Mining Permit S300796:

| Sampling Date | Conductivity (µS/cm) |
| --- | --- |
| January 13, 2010 | 382 |
| February 2, 2010 | 340 |
| April 7, 2010 | 408 |
| May 7, 2010 | 490 |
| June 14, 2010 | 629 |

49. For its application for the reissuance of WV/NPDES Permit WV1015184, which resulted in the November 2014 reissuance of that permit, Pritchard sampled the effluent from Outlet 003 for a variety of parameters on November 29, 2012, and reported the results to

WVDEP. Among those data were the following measurements of the specific conductance of the effluent and the concentrations of sulfates, TDS, calcium, and magnesium in the effluent:

| Conductivity (µS/cm) | Sulfates (mg/L) | TDS (mg/L) | Calcium | Magnesium |
|---|---|---|---|---|
| 1210 | 502 | 1000 | 122 | 88.2 |

All of those parameters measured significantly higher on November 29, 2012—after the construction of Valley Fill No. 3—than they did in 2005 at the time of the benthic sampling described above.

50.     In July 2012, Pritchard began reporting the concentrations of TDS and sulfates and the specific conductance that it measures in Little Rich Fork at DSLRF in its discharge monitoring reports ("DMRs") to WVDEP. The following table sets out the measurements that Pritchard has reported since that time:

| Reporting Month | Conductivity (µS/cm) | | Sulfates (mg/L) | | TDS (mg/L) | |
|---|---|---|---|---|---|---|
| | Average | Maximum | Average | Maximum | Average | Maximum |
| July 2012 | 1510 | 1610 | 572.5 | 688 | 1117 | 1286 |
| August 2012 | 1890 | 4980 | 638 | 712 | 1275 | 1420 |
| September 2012 | 1950 | 2050 | 579 | 652 | 1172.5 | 1351 |
| October 2012 | 1955 | 2020 | 613 | 622 | 1114 | 1148 |
| November 2012 | 1595 | 1770 | 514 | 544 | 944 | 988 |
| December 2012 | 964 | 1390 | 310 | 427 | 607 | 813 |
| January 2013 | 743.5 | 751 | 260.5 | 272 | 553 | 583 |
| February 2013 | 1305 | 1380 | 428.5 | 459 | 850.5 | 905 |
| March 2013 | 886 | 933 | 318 | 324 | 465.5 | 628 |
| April 2013 | 875 | 941 | 351.5 | 393 | 682 | 764 |
| May 2013 | 1535 | 1560 | 464 | 466 | 991.5 | 1017 |
| June 2013 | 1495 | 1750 | 514.5 | 624 | 1106 | 1371 |
| July 2013 | 1485 | 1600 | 500 | 528 | 1013.5 | 1067 |
| August 2013 | 1625 | 1670 | 616 | 654 | 1206.5 | 1303 |
| September 2013 | 1680 | 1740 | 628.5 | 730 | 1262 | 1475 |
| October 2013 | 1995 | 2010 | 672 | 746 | 1271.5 | 1326 |
| November 2013 | 1700 | 1780 | 581 | 608 | 1095 | 1121 |
| December 2013 | 1295 | 1370 | 456.5 | 460 | 852.5 | 854 |
| January 2014 | 1552.5 | 2340 | 466 | 647 | 862.5 | 1191 |
| February 2014 | 905.5 | 914 | 354.5 | 357 | 672 | 690 |

11

| | | | | | | |
|---|---|---|---|---|---|---|
| March 2014 | 1334 | 1750 | 476 | 574 | 880 | 1084 |
| April 2014 | 1507 | 2110 | 540 | 712 | 1055.5 | 1399 |
| May 2014 | 2330 | 2490 | 793 | 856 | 1458.5 | 1546 |
| June 2014 | 1860 | 2110 | 657 | 768 | 1238 | 1418 |
| July 2014 | 2570 | 2700 | 958 | 1044 | 1676.5 | 1789 |
| August 2014 | 2295 | 2340 | 950 | 990 | 1659 | 1715 |
| September 2014 | 1865 | 2440 | 664 | 929 | 1225 | 1666 |
| October 2014 | 2745 | 3030 | 944 | 1100 | 1734 | 2011 |
| November 2014 | 1695 | 1860 | 529 | 620 | 993 | 1135 |
| December 2014 | 2520 | 2640 | 787 | 804 | 1429.5 | 1452 |
| January 2015 | 2255 | 2570 | 694 | 804 | 1276 | 1471 |

51.     High levels of conductivity, dissolved solids, alkalinity, and ionic chemicals (including sulfates, bicarbonate, magnesium and calcium) are a primary cause of water quality impairments downstream from mine discharges.

52.     In 2011, EPA scientists summarized the existing science connecting conductivity and biological degradation in an EPA report entitled, "A Field-Based Aquatic Life Benchmark for Conductivity in Central Appalachian Streams." That report, which was peer-reviewed by scientists on EPA's Science Advisory Board, used EPA's standard method for deriving water quality criteria to derive a conductivity benchmark of 300 µS/cm. Id. at xiv-xv. According to the species sensitivity distribution in the benchmark, on average, five percent of species are lost when conductivity rises to 295 µS/cm, over 50% are lost at 2000 µS/cm, and close to 60% are lost at 3000 µS/cm. Id. at 18. EPA considered potential confounding factors, including habitat, temperature, deposited sediments, and pH, and concluded that none of them altered the relationship between conductivity and biological decline or the benchmark value of 300 µS/cm. Id. at 41, B-22.  EPA found that the loss of aquatic species from increased conductivity was "a severe and clear effect." Id. at A-37.  EPA also conducted a detailed causal assessment and concluded that there is a causal relationship between conductivity and stream impairment in West Virginia. Id. at A-39.  Finally, EPA's benchmark report analyzed the relationship between the WVSCI biological impairment threshold and conductivity levels, and found that a WVSCI score of 64 (close to the impairment threshold of 68) corresponds to

streams with conductivity of about 300 µS/cm on average. Id. at A-36. A statistical analysis included in the benchmark determined that at conductivity level of 300 µS/cm a stream is 59% likely to be impaired and at 500 µS/cm a stream is 72% likely to be impaired. Id.

53. The EPA Benchmark report is supported by more recent peer-reviewed studies. Cormier, et al., Derivation of a Benchmark for Freshwater Ionic Strength, Environmental Toxicology and Chemistry, 32(2): 263-271 (2013), and references cited therein; Bernhardt, et al., "How Many Mountains Can We Mine? Assessing the Regional Degradation of Central Appalachian Rivers by Surface Coal Mining," Environmental Science & Technology, 46 (15), pp. 8115–8122 (2012). The latter study's authors found that:

> The extent of surface mining within catchments is highly correlated with the ionic strength and sulfate concentrations of receiving streams. Generalized additive models were used to estimate the amount of watershed mining, stream ionic strength, or sulfate concentrations beyond which biological impairment (based on state biocriteria) is likely. We find this threshold is reached once surface coal mines occupy >5.4% of their contributing watershed area, ionic strength exceeds 308 µS cm$^{-1}$, or sulfate concentrations exceed 50 mg L$^{-1}$.

54. Based on the elevated conductivity and concentrations of TDS and sulfates detected by Pritchard since 2009, Plaintiffs have information and belief to allege that the ions present in Little Rich Fork downstream of Outlet 003 are consistent with those associated with coal mining pollution in this region (Pond et al. 2008; Palmer et al. 2010; Bernhardt and Palmer 2011; Lindberg et al. 2012; Pond et al. 2010; Pond et al. 2012; Pond et al. 2014; Kunz 2013). The ionic mixture of calcium, magnesium, sulfate, and biocarbonate in alkaline mine water causes the loss of aquatic macroinvertebrates in Appalachian areas where surface coal mining is prevalent; it is the mixture of ions that causes the biological impairment (Cormier et al. 2013b; Cormier and Suter 2013). This mixture also has significant adverse effects on fish assemblages (Hitt 2014; Hopkins 2013) and has toxic effects on aquatic life, including mayflies (Kunz 2013; Kennedy 2004).

55. Pritchard's Fourmile Surface Mine is a major development activity covering 668.16 acres. The high mining intensity in the affected watersheds and the related discharges from Outlet 003 and Valley Fill No. 3 has likely caused or materially contributed to biological impairment in Little Rich Fork.

56. There are no other evident sources of ionic pollution into Little Rich Fork apart from Valley Fill No. 3, and the pollutant concentrations and conductivity from Outlet 003 on November 29, 2012, demonstrate that the drainage from Valley Fill No. 3 is the source of the elevated pollutant concentrations and conductivity.

57. Because Valley Fill No. 3 was constructed in the headwaters of Little Rich Fork, flow from Outlet 003 contributes most of the flow to the stream.

58. Moreover, Outlet 003 discharges on a regular basis. Since December 2009, Pritchard has never reported a "No Flow" in its DMRs to WVDEP. The following table summarizes the flow that Pritchard has reported from Outlet 003 from December 2009 through January 2015:

| Reporting Period | Minimum Flow (gpm) | Maximum Flow (gpm) |
|---|---|---|
| December 2009 | 0.015 | 0.032 |
| January 2010 | Not Reported | 0.06 |
| February 2010 | Not Reported | 0.06 |
| March 2010 | Not Reported | 0.07 |
| April 2010 | Not Reported | 42.00 |
| May 2010 | Not Reported | 36.00 |
| June 2010 | Not Reported | 58.00 |
| July 2010 | Not Reported | 59.00 |
| August 2010 | Not Reported | 17.95 |
| September 2010 | Not Reported | 9.00 |
| October 2010 | Not Reported | Not Reported |
| November 2010 | Not Reported | 21.00 |
| December 2010 | Not Reported | 21.00 |
| January 2011 | Not Reported | 20.00 |
| February 2011 | Not Reported | 16.00 |
| March 2011 | Not Reported | 16.00 |
| April 2011 | Not Reported | 31.00 |

| | | |
|---|---|---|
| May 2011 | Not Reported | 21.00 |
| June 2011 | Not Reported | 16.00 |
| July 2011 | Not Reported | 22.00 |
| August 2011 | Not Reported | 16.00 |
| September 2011 | Not Reported | 33.00 |
| October 2011 | Not Reported | 19.00 |
| November 2011 | Not Reported | 14.00 |
| December 2011 | Not Reported | 22.00 |
| January 2012 | Not Reported | 39.00 |
| February 2012 | Not Reported | 30.00 |
| March 2012 | Not Reported | 24.00 |
| April 2012 | Not Reported | 18.00 |
| May 2012 | Not Reported | 26.00 |
| June 2012 | Not Reported | 12.00 |
| July 2012 | Not Reported | 5.00 |
| August 2012 | Not Reported | 11.00 |
| September 2012 | Not Reported | 8.00 |
| October 2012 | Not Reported | 16.00 |
| November 2012 | Not Reported | 16.00 |
| December 2012 | Not Reported | 0.077 |
| January 2013 | Not Reported | 24.00 |
| February 2013 | Not Reported | 16.00 |
| March 2013 | Not Reported | 24.00 |
| April 2013 | Not Reported | 21.00 |
| May 2013 | Not Reported | 11.00 |
| June 2013 | Not Reported | 11.00 |
| July 2013 | Not Reported | 10.00 |
| August 2013 | Not Reported | 10.00 |
| September 2013 | Not Reported | 10.00 |
| October 2013 | Not Reported | 8.00 |
| November 2013 | Not Reported | 10.00 |
| December 2013 | Not Reported | 27.00 |
| January 2014 | 19.00 | 29.00 |
| February 2014 | 16.00 | 19.00 |
| March 2014 | 16.00 | 20.00 |
| April 2014 | 0.044 | 0.049 |
| May 2014 | 16.00 | 18.00 |
| June 2014 | 10.00 | 14.00 |
| July 2014 | 6.00 | 6.00 |
| August 2014 | 6.00 | 6.00 |
| September 2014 | 6.00 | 10.00 |
| October 2014 | 6.00 | 14.00 |
| November 2014 | 12.00 | 18.00 |
| December 2014 | 13.00 | 18.00 |
| January 2015 | 12.00 | 15.00 |

59. In sum, the available evidence shows that, since at least 2009 and as a result of Pritchard's mining operations at it Fourmile Surface Mine, Little Rich Fork has had elevated chemical ions, including sulfate, calcium, magnesium, and bicarbonate, measured as increased conductivity, TDS, and sulfates, and has likely biologically impaired aquatic life. Dr. Ryan King of Baylor University conducted a statistical analysis of the relationship between conductivity and WVSCI scores, and concluded that 97% of streams in West Virginia with conductivity greater than 1500 µS/cm—as has been measured in Little Rich Fork—have failing WVSCI scores (King 2014). Accordingly, Dr. King concluded that "conductivity associated with surface mining consistently and unequivocally is associated with biological impairment, and is close to 100% accurate when conductivity exceeds 1500 µS/cm." Id. As a result, it is a near statistical certainty that Little Rich Fork is biologically impaired.

60. In addition, because of solar heating of the sediment control ponds upstream of Outlet 003, the mine has discharged a pollutant (i.e., heat) that has caused or materially contributed to increased temperature in downstream waters which may be a contributing factor to the observed biological impairment. The mine has also discharged other pollutants from Outlet 003 (e.g., manganese and iron) that degrade the habitat of downstream waters by causing or materially contributing to increased embeddedness of the stream substrate, which may be another contributing factor to the observed biological impairment. These discharges and violations began when Valley Fill No. 3 was constructed and are continuing.

61. On the basis of Pritchard's continuing violations of the water quality standards incorporated into its WV/NPDES Permit WV1015184 and the absence of any evidence of meaningful efforts by Pritchard to eradicate the cause of the violations, Plaintiffs allege that Pritchard is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

## FIRST CLAIM FOR RELIEF
### (Clean Water Act Violations)

62. Plaintiffs incorporate by reference the allegations in paragraphs 1 though 61, supra.

63. Since at least 2009, Pritchard's Fourmile Surface Mine has discharged pollutants from Valley Fill No. 3 and its associated drainages through point sources, i.e., Outfall 003, into Little Rich Fork pursuant to WV/NPDES Permit No. WV1015184.

64. Little Rich Creek is a water of the United States within the meaning of 33 U.S.C. § 1362(7).

65. Since at least 2009, Pritchard has discharged and continues to discharge pollutants that cause ionic stress and biological impairment in Little Rich Fork and its receiving waters in violation of the narrative water quality standards for biological integrity and aquatic life protection. 47 C.S.R. §§ 2-3.2.e & 2-3.2.i.

66. Pritchard has also discharged other pollutants including, heat, manganese, iron, and TSS, which may materially contribute to biological impairment in Little Rich Fork and its receiving waters in violation of the narrative water quality standards for biological integrity and aquatic life protection. 47 C.S.R. §§ 2-3.2.e & 2-3.2.i.

67. On information and belief, Plaintiffs allege that the pollutants described in Paragraphs 66 & 67 have led to the biological impairment of Little Rich Fork and/or its receiving waters.

68. The narrative water quality standards for biological integrity and aquatic life protection incorporated by reference into Part C of Pritchard's WV/NPDES Permit WV1015184 are "effluent standards or limitations" for purposes of Section 505(a)(1) and 505(f)(6) of the

Clean Water Act because they are a condition of a permit issued under Section 402 of the Act. 33 U.S.C. §§ 1342, 1365(a)(1), 1365(f)(6).

69. Based on the science correlating WVSCI scores and conductivity; the measured concentrations of specific conductivity, sulfates, TDS, and other pollutants in Pritchard's discharges; and Pritchard's failures to take corrective actions to address those conditions, Plaintiffs believe and allege that Pritchard is in continuing and/or intermittent violation of its WV/NPDES Permit WV1015184 and the CWA.

70. Pritchard is subject to an injunction under the CWA ordering it to cease its permit violations.

## SECOND CLAIM FOR RELIEF
### (SMCRA Violations)

71. Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 70, supra.

72. Pritchard's Surface Mining Permit S300796 requires it to comply with performance standards of the WVSCMRA. 38 C.S.R. § 2-3.33(c).

73. Those performance standards provide that "discharge from areas disturbed by surface mining shall not violate effluent limitations or cause a violation of applicable water quality standards." 38 C.S.R. § 2-14.5.b.

74. West Virginia water quality standards prohibit discharges of "[m]aterials in concentrations which are harmful, hazardous or toxic to man, animal or aquatic life" or that cause "significant adverse impacts to the chemical, physical, hydrologic, or biological components of aquatic ecosystems." 47 C.S.R. §§ 2-3.2.e & 2-3.2.i.

75. WVSCMRA performance standards also provide that "[a]ll surface mining and reclamation activities shall be conducted . . . to prevent material damage to the hydrologic

18

balance outside of the permit area." 38 U.S.C. § 2-14.5. "Material damage," at a minimum includes violations of water quality standards.

76. By violating West Virginia water quality standards for biological integrity and aquatic life protection at the Fourmile Surface Mine, Pritchard has also violated, and is continuing to violate, the performance standards incorporated as conditions in its Surface Mining Permit S300796.

77. Federal and State performance standards require that, "[i]f drainage control, restabilization and revegetation of disturbed areas, diversion of runoff, mulching, or other reclamation and remedial practices are not adequate to meet the requirements of this section and § 816.42, the operator shall use and maintain the necessary water-treatment facilities or water quality controls." 30 C.F.R. § 816.41(d)(1); *see also,* 38 C.S.R. § 2-14.5.c ("Adequate facilities shall be installed, operated and maintained using the best technology currently available in accordance with the approved preplan to treat any water discharged from the permit area so that it complies with the requirements of subdivision 14.5.b of this subsection.").

78. The violations identified herein show that Pritchard's existing treatment methods are insufficient to meet that requirement. Thus the performance standards require Pritchard to construct a system that will effectively treat its effluent to levels that comply with all applicable water quality standards.

79. Each violation of Pritchard's Surface Mining Permit No. S300796 is a violation of SMCRA and is enforceable under the citizen suit provision of SMCRA, 30 U.S.C. § 1270(a).

80. Pritchard is subject to an injunction under SMCRA ordering it to cease its permit violations.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

1. Declaring that Pritchard has violated and is in continuing violation of the Clean Water Act and SMCRA;

2. Enjoining Pritchard from operating the Fourmile Surface Mine in such a manner as will result in further violations of WV/NPDES Permit No. WV1015184 and Surface Mining Permit S300796;

3. Ordering Pritchard to immediately comply with the effluent limitations in WV/NPDES permit WV1015184;

4. Ordering Pritchard to immediately comply with the terms and conditions of Surface Mining Permit S300796;

5. Ordering Pritchard to conduct monitoring and sampling to determine the environmental effects of its violations, to remedy and repair environmental contamination and/or degradation caused by its violations, and restore the environment to its prior uncontaminated condition;

6. Awarding Plaintiffs their attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

7. Granting other such relief as the Court deems just and proper.

Respectfully submitted,

**/s/ Derek O. Teaney**
DEREK O. TEANEY (W. Va. Bar No. 10223)
J. MICHAEL BECHER (W.Va. Bar No. 10588)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 793-9007

*Counsel for Plaintiffs*